## BARTON v. SANPETE COUNTY.

No. 2970. Decided December 29, 1916 (162 Pac. 611).

1. COUNTIES—BOUNDARIES—POWER OF LEGISLATURE. The Legislature has the sole power to define and determine the boundary lines between counties and to provide the method by which such boundaries, when in dispute, may be established and marked upon the ground. (Page 192.)

2. COUNTIES—BOUNDARIES—STATUTES. Comp. Laws 1907, section 469, defined the boundaries of J. county, and section 477 defined the boundaries of S. county, and section 487 provided that any disputed county boundary might be determined by the county surveyors, boards of county commissioners, having the services of the state engineer, who should determine such line by survey which should be deemed permanent until superseded by legislative enactment. Laws 1913, c. 71, amending sections 469 and 477, established the disputed boundary line. *Held*, that the

Legislature had power to define and establish such line, and that the boundary line as established pursuant to the later act should prevail. (Page 192.)

3. COUNTIES—CHANGE IN BOUNDARY—CONSTITUTIONAL PROVISIONS. Const. art. 11, section 3, providing that no territory shall be stricken from any county unless a majority of the voters living therein, as well as of the county to which it is annexed, shall vote therefor, and then only as prescribed by general laws, was not violated by Laws 1913, c. 71, finally establishing a disputed county boundary line as defined therein, where the line had previously been surveyed and fixed until superseded by legislative enactment, as until so superseded the line was not permanently fixed, so that it could not be said that any territory was "stricken" by the statute. (Page 193.)

Appeal from District Court, Seventh District; *Hon. A. H. Christensen*, Judge.

Action by Alexander Barton against Sanpete County. On an agreed statement of facts, the court gave judgment for defendant. Plaintiff appeals.

JUDGMENT REVERSED, without granting a new trial, and remanded, with directions to vacate the findings and conclusions of law and substitute others in conformity with this opinion.

*Dilworth Woolley* and *J. H. McKnight* for appellant.

*Geo. Christensen* for respondent.

FRICK, J.

The plaintiff sued Sanpete County to recover back certain taxes which, he alleges, said county illegally assessed and levied against his property. The plaintiff paid the taxes under protest, as provided by our statute, and he now brings this action, under said statute, to determine the authority of the county to impose and collect said taxes. The cause was submitted to and determined by the district court of Sanpete County upon an agreed statement of facts. The court, upon such statement, found in favor of Sanpete County, entered judgment accordingly, and the plaintiff appeals.

The action involves a dispute of long standing between the counties of Sanpete and Juab of this state respecting a portion of the boundary line between said counties. The plaintiff's lands, against which the taxes in question were assessed, lie near the boundary line between said counties, and while he and Juab County insist that said lands are within Juab County, and assessable therein, Sanpete County claims, and the district court found, that the plaintiff's lands are within Sanpete County, and hence the taxes in question were lawfully imposed.

The boundaries of Juab County, as defined by the Legislature, are found in Comp. Laws 1907, section 469, and those of Sanpete County are found in section 477 of that compilation. The particular portion of the boundary line in dispute is described in section 477, supra, as follows:

"* * * To a point east of the place where the Gunnison road crosses the divide between Chicken creek and Sevier river; thence in a straight line southwesterly to the upper bluff rocks at the south end of Cedar ridge."

The language describing the same boundary in section 469 is practically the same. The points in dispute are: (1) The precise place or point where the Gunnison road crosses the divide between Chicken creek and the Sevier river; (2) the precise point on the mountain range referred to which lies east of the point first mentioned; and (3) the precise point that is referred to by the description of "the upper bluff rocks at the south end of Cedar ridge." When the first point is once found the second is easily determined, since that point must be found due east of the first point. The third point is, however, entirely independent of the other two.

As before stated, the dispute between the two counties is of long standing, and has manifested itself in various ways and at different times. In 1907, in order to devise some method or means by which disputed boundary lines, including the one in question here, could be definitely fixed and settled, the Legislature enacted a statute (Comp. Laws 1907, section 487), which reads as follows:

"Whenever any dispute or uncertainty shall arise as to any county boundary, the same may be determined by the

county surveyors of the counties interested, and in case they fail to agree, or otherwise fail to establish the boundary, the board of county commissioners of either or both counties interested shall engage the services, of the state engineer, who, with the aforesaid county surveyors, or either of them if but one appears for that purpose, all having received due and proper notice, shall proceed forthwith to permanently determine such boundary line, by making the necessary surveys and directing suitable monuments to designate said boundaries, which shall be deemed permanent until superseded by legislative enactment. Nothing in this section shall be construed to give the surveyors or state engineer mentioned herein, any further authority than to erect suitable monuments to designate said boundaries as they are now established by law.''

Pursuant to said section the state engineer, in the year 1908, went upon the ground and located the points or monuments described in sections 469 and 477, supra, at the places where he thought they should be according to the descriptions found in said sections. According to the boundary line as thus indicated by the state engineer plaintiffs lands, which are in question here, were placed within Sanpete County. Juab County, however, still disputed the correctness of the boundary as it was indicated by the state engineer, and insisted that the lands in question were in that county, and that the plaintiff should be assessed by and should pay taxes to said county. The question was again taken to the Legislature by Juab County, and in 1913 the Legislature passed an act amending both sections, 469 and 477, supra, and finally established the disputed boundary line as defined in said amendatory act. See chapter 71, Laws Utah 1913, p. 113. The boundary as defined in said act has been established and marked on the ground, and, as so marked, plaintiff's lands are within Juab and not within Sanpete County, as found by the district court.

Plaintiff insists that the district court erred in not adhering to the boundary line as the same was established by the Legislature, pursuant to the act of 1913, supra. Counsel for Sanpete County, however, defend the ruling of the court upon

two grounds: (1) That the act of 1913, for the reasons here-inafter stated, is invalid; and (2) that inasmuch as the state engineer had located the boundary line in 1908 pursuant to the provisions of section 487, supra, the boundary as the same was by him fixed should prevail.

, We shall consider counsel's two propositions in their inverse order.

The law, we think, is well settled that the Legislature has the sole power to define and determine the boundary lines between counties and to provide the means or **1** methods by which such boundaries, when in dispute, may be established and marked upon the ground. The law. is tersely stated in 11 Cyc. 346, in the following words:

"It rests with the Legislature of the state, not only to define the boundaries of counties, but also to provide the means whereby the true localities of such boundaries on the ground may be finally deter-mined; and the settling of the boundary lines of a county by an unauthorized survey may be ratified by a curative act of the Legis-lature."

In *Jones* v. *Powers*, 65 Tex. at page 213, the Supreme Court of Texas states the law thus:

"It rests with the Legislature to define the boundaries of counties and to provide the means whereby their true localities on the ground may be determined, and when these methods have been pursued and the line or lines ascertained as by law required to be, the line or lines so established should be considered the true ones, whether mathematically so or not. It is of more importance that the lines be certain and well defined than that they be absolutely correct. If a different rule were adopted untold injury and confusion might result."

While no doubt it is true, as counsel suggest, that if the Legislature has provided means by which the disputed bound-ary line may be established and marked upon the ground and the method provided for has been followed **2** and the disputed boundary has been established and marked upon the ground, the boundary line, as thus estab-lished, must thenceforth prevail for all purposes, and can thereafter be changed only by complying with the constitu-tional or statutory provisions relating to the subject, it should

be kept in mind, however, that in adopting section 487, supra, the Legislature did not confer power upon the state engineer to unconditionally determine and establish the disputed boundary line in question, or any other. The boundary line which the state engineer was authorized to establish, in the language of the act, ''shall be deemed permanent until super- seded by legislative enactment.'' The state engineer could thus only conditionally or provisionally locate or establish the disputed boundary line. The Legislature expressly re- served the right to ''supersede,'' that is, to· change, the boundary as located by the state engineer by ''legislative enactment.'' That right the Legislature exercised by adopt- ing the act of 1913, wherein that body located and established the boundary line, and, pursuant to that act, marked the same where plaintiff contends it should have been left by the district court. There is no dispute with regard to where that line is actually marked on the ground.

It is needless to urge that the Legislature did not adopt the best means or method to settle disputed boundary lines, or that it should have left the matter to the state engineer unconditionally. The Legislature did no more than was with- in its power to do in adopting both section 487, supra, and the act of 1913. We are forced to the conclusion, therefore, that the boundary line, as the same is now established upon the ground pursuant to the legislative act of 1913, must prevail.

Counsel for Sanpete County, however, contend that the act of 1913 is invalid because it is contrary to the provisions of article 11, section 3, of our Constitution, which provides:  **3**

''No territory shall be stricken from any county unless a majority of the voters living in such territory, as well as of the county to which it is to be annexed, shall vote therefor, and then only under such conditions as may be prescribed by general law.''

If we are correct in our conclusions so far, then it must also follow that counsel's last contention must fail. So far as the boundary line between Sanpete and Juab counties was in dispute, it was what might be termed merely a floating, or, to be more exact, an unidentified boundary. So long as the

monuments described by the Legislature in fixing the boundary line between the two counties were not definitely located, no one could say where the boundary line was, or where it would ultimately be located and established. The mere fact that the state engineer located a certain line as the boundary between the two counties did not place the territory on one side of such line, permanently within one county and the land or the territory upon the other side permanently within the adjoining county. The boundary line located by the state engineer was subject to change precisely the same after he had made the location as that line was subject to change before he had made it. The boundary had not, as yet, been permanently and legally located and fixed, and that event did not occur until 1913, when the Legislature exercised the right it had reserved unto itself by adopting section 487. Until then neither the court nor anyone else could say with certainty where the boundary line was, nor where it would ultimately be established. When the Legislature, therefore, in 1913, established the boundary line between the two counties it, for the first time, determined what territory belonged to Sanpete County and what territory belonged to Juab County. No territory, therefore, was "stricken" from Sanpete County when the boundary line was permanently established by the Legislature in 1913 within the purview of the constitutional inhibition. The legal effect of what was done by the Legislature was merely to determine and fix the originally contemplated territorial limits of the two counties. No territory was therefore annexed to one or stricken from the other county, and hence the constitutional provision has no application here. The contention that the act of 1913 is invalid must therefore also fail.

The contention of plaintiff that his lands are in Juab County and not in Sanpete County must prevail.

For the reasons stated the findings and conclusions of law, so far as the same are contrary to the views herein expressed, are vacated and set aside and the judgment in favor of Sanpete County is reversed. In view that all the facts are agreed to and that the only question involved here is one of law which can only be determined one way, no new trial is granted,

but the cause is remanded to the district court of Sanpete County, with directions to vacate the findings and conclusions of law in so far as they are contrary to the views herein expressed, and to substitute others therefor which conform to the views herein expressed, and to enter judgment in favor of the plaintiff upon both causes of action in accordance with the prayer of his complaint. The plaintiff to recover costs.

STRAUP, C. J., and McCARTY, J., concur.