SUMMIT COUNTY et al. v. RICH COUNTY.

No. 4051.   Decided February 15, 1924.   Rehearing Denied March 13, 1924.   (224 Pac. 653.)

1. COUNTIES—AUTHORITY OF LEGISLATURE TO DETERMINE BOUNDARIES STATED. The Legislature by reason of Const. art. 11, § 3, is without authority to establish or locate a new or any boundary line between counties where a boundary line exists, unless the description of the boundary is so indefinite, uncertain, or ambiguous that the line cannot be definitely determined from

the description of it given, or for any other reason the line cannot be located on the ground.[1]

2.  COUNTIES—LEGISLATURE IN ASCERTAINING BOUNDARIES MUST, AS FAR AS POSSIBLE, ESTABLISH BOUNDARY LINE ORIGINALLY INTENDED.  The Legislature must, in attempting to establish the correct boundary line between counties, so far as possible, establish and determine the boundary line so as to carry into effect and make certain the boundary line as it was intended to 'be established and fixed prior to the enactment of the correcting legislative act, and any act that attempts to establish a different or new boundary line without regard to the line so originally intended to be established is void, under Const. Art. 11, § 3.[1]

3.  COUNTIES—LEGISLATIVE ACT DETERMINING BOUNDARY LINE BETWEEN COUNTIES HELD INVALID.  Laws 1917, c. 113 (Comp. Laws 1917, § 1314), fixing the boundary line between Summit and Rich counties is in contravention of Const. art. 11, § 3, in that it disregards the plain intent of the territorial Legislature in fixing the boundary between such counties.

4.  CONSTITUTIONAL LAW—COURTS WILL NOT DECLARE ACT UNCONSTITUTIONAL IF IT CAN BE HELD OTHERWISE.  Courts will not declare an act of the Legislature unconstitutional if, by any consistent reasoning, it can be held to be otherwise.

Appeal from District Court, Third District, Salt Lake County; *G. A. Iverson,* Judge.

Action by Summit County and South Summit School District against Rich County.  Judgment for plaintiffs, and defendant appeals.

AFFIRMED.

*Marshall, Macmillan & Crow,* of Salt Lake City, for appellant.

*Dey, Hoppaugh & Mark* and *Frank A. Johnson,* all of Salt Lake City, for respondents.

---

[1] *Barton* v. *Sanpete County,* 49 Utah, 188, 162 Pac. 611.

GIDEON, J.

In this action plaintiffs, Summit county and South Summit school district, seek a decree of court declaring the claim of the defendant, Rich county, to have or exercise jurisdiction over certain territory described in the complaint or its inhabitants to be void in law and without claim of right whatever, and that defendant's officers and agents, or anyone claiming to act by or under its authority, be perpetually enjoined and restrained from exercising or attempting to exercise jurisdiction over said territory and from bringing and maintaining any suit or proceeding at law for levying or collecting taxes on persons or property in said territory and from exercising any jurisdiction thereover.

Plaintiffs had judgment. Defendant appeals.

This is the second appeal in this case. In the former appeal the question before the court was. Did the complaint state a cause of action? In the opinion of the court (57 Utah, 553, 195 Pac. 639), the allegations of the complaint are set forth at length. The reader is referred to that opinion for a more detailed statement of plaintiffs' claim. A map or drawing will be found in that opinion showing the area in dispute.

The controversy involves the right of jurisdiction over certain territory alleged to be located within Summit county, as the boundary of that county existed at and prior to the year 1917. Rich county justifies its claim and right to exercise jurisdiction over the disputed territory and its inhabitants, and the claim that the same is a part of Rich county under and by virtue of an act of the state Legislature of 1917 (Laws Utah 1917, c. 113; Comp. Laws Utah 1917, § 1314).

It is without dispute that, if the legislative act of 1917 is valid, the disputed area lies within Rich county; and it necessarily must and would follow, if that act is valid, that plaintiffs' cause of action is without merit. It is established by competent and sufficient proof that if that act of the Legislature is void and of no effect the disputed area is not

within Rich county, but is within Summit county as its boundary line existed prior to 1917.

The Union Pacific Railroad crosses the boundary line of Utah and Wyoming at or near the north boundary line of Summit county and at or near the south boundary line of Rich county. That road was established in its present location 30 years prior to the admission of Utah into the Union as a state. At the point where the railroad enters Utah it runs slightly north of west, approximately one-half mile, and then in a general way its direction is to the southwest.

Section 3 of article 11 of the Utah Constitution reads:

"No territory shall be stricken from any county unless a majority of the voters living in such territory, as well as the county to which it is to be annexed, shall vote therefor, and then only under such conditions as may be prescribed by general law."

The power of the Legislature to fix or determine the boundary line between two counties, where there is an uncertainty or ambiguity in the description of that line, or where for any other reason the same cannot be definitely located on the ground, has been considered by this court in two opinions, namely, *Barton* v. *Sanpete County*, 49 Utah, 188, 162 Pac. 611, and the opinion on the former appeal of this case The following legal propositions, in the opinion of the writer, are fairly deducible from the opinions of the court in those cases: (a) That the Legislature, by reason of the provisions of section 3, art. 11, of the Constitution quoted, is without authority by legislative act or otherwise to establish or locate a new or any boundary line between counties where a boundary line exists, unless the description of the boundary line is so indefinite, uncertain, or ambiguous that the line cannot be definitely determined from the description of it given, or for any other reason the line cannot be located on the ground. (b) That the Legislature must, in attempting to establish the correct boundary line, so far as possible, establish and determine the boundary line so as to carry into effect and make certain the boundary line as it was intended to be established and fixed prior to the enactment of the correcting legislative act. (c) That

any act of the Legislature that attempts to establish a different or new boundary line without regard to the line so originally intended to be established is void as being within the inhibition of the Constitution.

The description of the boundary line of Summit county, as the same existed before the legislative enactment of 1917, so far as the same affects the disputed area, is:

"Beginning on the northern boundary of the state at longitude 110 degrees west, thence west to the southwest corner of Wyoming; thence north to a point east of the point where the north side of the Union Pacific Railroad crosses the summit first west of Bear river valley; thence west to the north side of said railroad; thence southwesterly along the north side of said road to a point one mile east of Wasatch station; thence northerly to the nearest point of the summit of the range of mountains between Bear river and Weber valley." Comp. Laws Utah 1907, § 479.

The claimed uncertainty is the location on the Utah-Wyoming line of the point "east of the point where the north side of the Union Pacific Railroad crosses the summit first west of the Bear river valley." It is the claim of plaintiffs that the "summit first west of Bear river valley" is near the Wyoming line north of the Union Pacific railroad. It is the contention of Rich county, defendant, that the summit mentioned is at or near the original location of Wasatch station, a distance of 5 or 6 miles from the Wyoming line. The language quoted from the description, considered in connection with the other parts of the description and the location of the railroad and stations on that road, admits of no other conclusion or construction than that the point on the Utah-Wyoming line east of the summit first west of the Bear river valley is located north of the Union Pacific railroad where it enters Utah. The description following the mention of that point clearly indicates that the boundary line from thence on is north of the Union Pacific track. The railroad track bends slightly to the north just after it enters Utah. The description is that the boundary line runs west from the point on the Utah-Wyoming line to the north side of the railroad. The line then follows along the north side of the railroad in a southwesterly direction to a point one mile east of Wasatch station. If the claim of the defendant

Rich county is to be sustained, manifestly all that part of the boundary description which controls the line running from the point on the Utah-Wyoming line to a point about one mile east of Wasatch station is meaningless and cannot be applied in determining the boundary line of Summit county. There does not appear any reason why that part of the description should have been entirely ignored by the Legislature.

The boundary of Summit county as it affects the disputed area as determined by the legislative act of 1917 is therein described as follows:

"Beginning on the northern boundary of the state at a point two and one-fifth miles west of the Uintah special meridian if prolonged; thence west to the southwest· corner of Wyoming: thence north to the northeast corner of lot No. 6, section 4, township 5 north, range 8 east, Salt Lake meridian; thence west to the west quarter corner of section 1, township 5 north, range 7 east, Salt Lake meridian; thence westerly to the point where the Union Pacific railroad crosses the summit dividing the valley of the Bear river from the valley of the Weber river."

The point on the Utah-Wyoming line from which the boundary line between Summit county and Rich county runs west, as established by the legislative act of 1917, is approximately four miles south of the point where the Union Pacific railroad enters Utah. The line established by the act of 1917 intersects or crosses the Union Pacific railroad at or near the first or original location of Wasatch station. The effect of the act is to detach from Summit county and place within Rich county the line of railroad from the state boundary line westerly to a point near or at Wasatch station as originally located, and also the territory lying north of the boundary line as fixed by the legislative act and south of the railroad track. In so establishing the line, the Legislature clearly failed to carry into effect the intent of the territorial Legislature in its efforts to establish the boundary line between Summit county and Rich county. If the legal conclusions hereinbefore stated are rightly deducible from the opinions of this court on the former appeal of this case and in the *Barton Case,* supra, respecting the power and duty of the Legislature with refer-

ence to the establishment of boundary lines between counties, then it must necessarily follow that the act of the Legislature of 1917 in determining and fixing the boundary line as the same affects the area in dispute and here in question is in contravention of the provisions of our state Constitution and is therefore null and void.

We are not unmindful of the rule of law that courts will not declare an act of the Legislature unconstitutional if by any consistent reasoning it can be held to be otherwise. It however appearing from this record that the Legislature, in establishing the boundary line between Summit county and Rich county by the act of 1917, disregarded the plain intent of the territorial Legislature in fixing the boundary line between such counties, thereby detaching from Summit county the disputed area which was clearly within that county under the description of the formerly established boundary, we can see no escape from the conclusion that the lower court was right in declaring and holding the act of the 1917 Legislature unconstitutional and therefore void.

It remains to be determined as a question of fact whether the boundary line as it existed prior to the act of 1917 included within Summit county and not within Rich county the disputed area. The trial court determined that such area is within Summit county. It would subserve no good purpose to attempt to review the testimony, hence it must suffice to say that the testimony would not justify this court in setting aside the trial court's findings and substituting contrary findings. In addition to the testimony of expert engineers to support the court's findings, it is made to appear that the officials of both Rich county and Summit county for many years acquiesced in the fact that the disputed area was a part of Summit county.

It necessarily follows from what has been said that the judgment of the district court should be, and it accordingly is, affirmed, with costs.

WEBER, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.